# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CARMEN WOODS, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 2:14-CV-02104-MHH** |
| | ) | |
| **SANTANDER CONSUMER USA, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

| | | |
|---|---|---|
| **NORMA WILLIAMS, ET AL.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 2:15-CV-00919-MHH** |
| | ) | **Consolidated with 2:14-CV-02104-MHH** |
| | ) | |
| **SANTANDER CONSUMER USA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER[1]

This opinion addresses two pending motions to dismiss in *Williams v. Santander*. In *Williams*, the plaintiffs assert claims against defendant Santander Consumer USA, Inc. for alleged violations of the Telephone Consumer Protection

---

[1] The Court vacates its March 31, 2016 order. (Doc. 41). The Court substitutes this memorandum opinion and order in place of the March 31, 2016 order.

Act or TCPA.  The plaintiffs bought cars and used consumer loans to finance the purchases.  The plaintiffs allege that Santander acquired their loans, and, in an attempt to collect the debts that the plaintiffs owed, used an automated service to call the plaintiffs' cell phones without the plaintiffs' express prior consent.  (Doc. 1, ¶¶ 27, 28, 30).[2]

Initially, twenty-one plaintiffs sued Santander in the *Williams* case.  (Doc. 1).  To date, eight plaintiffs have dismissed their claims voluntarily.  (*See* Docs. 14-17).  Santander asks the Court to dismiss the claims of 12 of the remaining 13 plaintiffs.  Pursuant to Federal Rule of Civil Procedure 12(b)(2), Santander asks the Court to dismiss the claims of eight plaintiffs who reside in Tennessee and bought their cars in Tennessee.  Santander argues that the Court lacks personal jurisdiction over the company with respect to the claims of those eight plaintiffs. (Doc. 6).  Pursuant to Federal Rule of Civil Procedure 12(b)(3), Santander asks the Court to dismiss the claims of four Alabama plaintiffs for improper venue because the plaintiffs bought their vehicles outside of the Northern District of Alabama. (Doc. 7).  For the reasons explained below, the Court finds that it may exercise

---

[2] In this opinion, unless otherwise stated, Doc. cites pertain to the docket entries in *Williams*, Case No. 15-cv-919.

personal jurisdiction over Santander with respect to all of the plaintiffs' claims, and venue is proper in this district.[3]

## I.      Rule 12(b)(2) Motion to Dismiss

Rule 12(b)(2) authorizes a defendant to challenge a court's jurisdiction over the defendant.  The jurisdictional issue in this case turns on the constitutional principles that animate the concept of personal jurisdiction.  As discussed below, Santander is an out-of-state corporate defendant.  Santander acknowledges that this Court may exercise jurisdiction over the company with respect to the Alabama plaintiffs' TCPA claims.  Santander challenges this Court's jurisdiction only with respect to the Tennessee plaintiffs who have joined with the Alabama plaintiffs to pursue claims against Santander in this forum.  Stated simply, Santander argues that it would be unfair for the company to have to defend the claims of the Tennessee plaintiffs in this forum.  Under the circumstances of this case, the Court disagrees.

The analysis of personal jurisdiction revolves almost entirely around the defendant's conduct, not the plaintiff's conduct.  When the analysis involves a corporate defendant like Santander, the Court must begin by determining whether the corporation is a resident of the forum state.  Generally speaking, a corporation

---

[3] The Court held a hearing on the motions on December 2, 2015.  A court reporter was present, and a transcript is available upon request.

resides in its state of incorporation and in the state in which it has its principal place of business. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-62 (2014). It is undisputed that Santander is incorporated in Illinois, and its principal place of business is in Texas. (Doc. 1, ¶ 22; Doc. 6-1, ¶ 4). Therefore, the Court regards Santander as an out-of-state defendant.[4]

In determining whether to exercise personal jurisdiction over an out-of-state defendant, a federal court must consider (1) whether the exercise of jurisdiction is permitted by the state long-arm statute, and (2) whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The two inquiries merge in this case because "Alabama's long-arm statute permits service of process to the fullest extent constitutionally permissible." *Sloss*

---

[4]  When a question about personal jurisdiction turns on disputed facts, a court uses a burden-shifting test to examine the issue. A plaintiff "'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of [personal] jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). A court must accept as true the jurisdictional allegations in the plaintiff's complaint unless "a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position.'" *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (internal quotation marks omitted)). If that happens, then the burden shifts back to the plaintiff to provide evidence supporting the court's exercise of jurisdiction over the defendant "unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006). When the parties present conflicting evidence, a court "must construe all reasonable inferences in favor of the plaintiff." *Id.* A court may exercise jurisdiction over a defendant if the plaintiff "presents enough evidence to withstand a motion for a directed verdict." *Stubbs*, 447 F.3d at 1360. Here, the facts relating to personal jurisdiction are largely undisputed. The jurisdictional issue pertaining to the eight Tennessee plaintiffs turns on a question of law. Unless otherwise stated, the facts that the Court cites in this section of the opinion are undisputed.

*Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b)).

Under the Due Process Clause, "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler*, 134 S. Ct. at 754 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)) (internal quotations omitted). "The Due Process Clause, by ensuring the 'orderly administration of the laws,' gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (quoting *International Shoe*, 326 U.S. at 319).

There are two categories of personal jurisdiction:  general jurisdiction and specific jurisdiction. *Daimler*, 134 S. Ct. at 754.  General jurisdiction "refers to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose" because the defendant is "at home" in the forum. *Daimler*, 134 S.Ct. at 752.  The forum's exercise of jurisdiction over the defendant in that instance does not offend traditional notions of fair play or substantial justice because the defendant's

contacts with the forum are substantial, making litigation in the forum predictable. The Tennessee plaintiffs do not contend that this Court has general jurisdiction over Santander. (Doc. 32, p. 5). The Court finds that Santander is not generally subject to suit in this forum because the company is not incorporated in Alabama, and Santander does not have its principal place of business here.[5]

Therefore, the Court must determine whether Santander is subject to a more targeted exercise of jurisdiction in this forum. A forum's limited exercise of jurisdiction over a defendant is called specific jurisdiction. Under the concept of specific jurisdiction, a court may hear a claim against a nonresident corporate defendant when the defendant, through its conduct, has established minimum contacts with the forum state such that a court's exercise of jurisdiction over the defendant in the forum does not violate notions of fair play. In the analysis of specific jurisdiction, the plaintiff's conduct is largely insignificant. "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014). "'[T]he central concern of the inquiry'" is the "'relationship among the defendant, the forum, and the litigation'" *Daimler*, 134 S. Ct. at 754 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 197 (1977)); *see also Walden*, 134 S. Ct. at 1121. A court examining the issue of specific jurisdiction

---

[5] This finding pertains to both the Alabama plaintiffs and the Tennessee plaintiffs.

must evaluate the nature of the defendant's general contacts with the state, the nature of the conduct at issue, the extent to which the conduct at issue impacted the forum state generally, and the extent to which the conduct at issue directly injured citizens of the forum state.

In its Rule 12(b)(2) motion, Santander states that it "does not dispute that this Court has 'specific personal jurisdiction' over [the company] as to the claims of Alabama plaintiffs, as well as Clifton Whearlee and Wendell Payne (Tennessee residents who purchased vehicles in Alabama)." (Doc. 6, p. 9; *see also* Doc. 6, p. 5; Doc. 8, p. 9).[6] But, Santander argues, there are limits to the Court's jurisdiction over the company.  Santander posits that the Court may not exercise jurisdiction over the company with respect to eight plaintiffs who reside in Tennessee and bought their vehicles there because the eight plaintiffs have not "alleged any conduct by SCUSA as to their loans that took place in Alabama," and Santander "did not service the Tennessee Plaintiffs' loans from Alabama." (Doc. 6, p. 11). Santander contends that allowing the eight Tennessee plaintiffs to travel on the jurisdictional coattails of the Alabama plaintiffs and the Tennessee plaintiffs who bought cars in Alabama would violate due process.

---

[6] Since Santander filed its motion to dismiss, one of those two Tennessee residents voluntarily dismissed his TCPA claim.

Santander's argument misses the mark.  The conduct at issue in this TCPA action concerns auto-dialer calls that Santander placed to the plaintiffs' cell phones as part of Santander's debt collection activities; the original vehicle sales transactions are of limited significance to the plaintiffs' claims.  Santander's conduct – both its general conduct within the State of Alabama and the specific conduct that gives rise to this TCPA action – provides a constitutional basis for this Court to exercise jurisdiction over the company with respect to the claims of the eight Tennessee plaintiffs.

For a court "to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121.  There are "[t]wo related aspects of this necessary relationship." *Id.* at 1121-22.  "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 1122 (emphasis in *Walden*).  Second, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.*  Although the residence of the plaintiffs who live in and bought cars in Tennessee is not "completely irrelevant to the jurisdictional inquiry," the residence of these plaintiffs "in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of [a] defendant's contacts." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984).

As stated, Santander has acknowledged its relationship with the forum.  In its answer to the claims of the Alabama plaintiffs and the two Tennessee plaintiffs who bought vehicles in Alabama, Santander admits that the company acquired and/or serviced the loans that those plaintiffs used to buy vehicles in Alabama. (Doc. 8, pp. 2-5, ¶¶ 1-11, 27).  Moreover, Santander acknowledges that it does business in all 50 states, including Alabama, and the company has qualified to do business in Alabama.  (Doc. 6, pp. 14-15; Doc. 6-1, p. 2).[7]  Although "Alabama borrowers represent less than 3% of the loans that [the company] services," Santander admits that the company "contract[s] with automobile dealers in Alabama to provide financing for automobile loans."  (Doc. 6-1, p. 2).  Thus, Santander has created general contacts with the state of Alabama.

There also is an adequate relationship between the forum and the litigation. *Keeton*, 465 U.S. at 770; *Walden*, *supra*.  In this TCPA case, the plaintiffs allege

---

[7] Under Alabama law, a foreign corporation must qualify to do business in the state.  *See* Ala. Code § 10A-1-7.01, *et seq*.  In addition, to take assignments of consumer loans, Alabama law may require Santander to obtain a license through the Alabama State Banking Department. *See* Ala. Code § 5-19-22.  In addition, as of January 1, 2016, Santander was licensed with the Alabama State Banking Department.  *See* http://216.226.177.103/ACCA_Licenses2.asp?VTI-GROUP=0&search=santander&submit1=Search.   The Court takes judicial notice of this fact from the Alabama State Banking Department website because the information "can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201(b)(2); *see also Coleman v. Dretke*, 409, F.3d 665, 667 (5th Cir. 2005) (finding that a previous panel did not err in taking judicial notice of a state agency website); *In re Everglades Island Boat Tours, LLC*, 484 F. Supp. 2d 1259, 1261 (M.D. Fla. 2007) (taking judicial notice of state agency website).

that Santander violated 47 U.S.C. § 227(b)(1)(A)(iii).[8]  (Doc. 1, p. 11).  That section of the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service . . . or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States." *Id.*

Each plaintiff, whether from Alabama or Tennessee, contends that Santander called the plaintiff's cell phone on multiple occasions using a pre-recorded voice or an automatic telephone dialing system known as the "Aspect Telephony system." (Doc. 1, ¶¶ 30-51).  The Alabama plaintiffs who live in and bought cars in Alabama presumably received most of the calls in Alabama, just as the Tennessee plaintiffs who live in and bought cars in Tennessee presumably received some – maybe even a majority – of the calls in Tennessee.  And the plaintiffs who live in Tennessee and bought cars in Alabama presumably received a majority of the calls in Tennessee. But the place of each plaintiff's residence made no difference to Santander.  Santander made the calls at issue to mobile cell phones, without

---

[8] Congress amended the TCPA on November 2, 2015, after the plaintiffs filed their lawsuit.  The statutory provision under which the plaintiffs filed suit, 28 U.S.C. § 227(b)(1)(iii), is now codified at 28 U.S.C. § 227(b)(1)(A)(iii).

concern for the location in which a borrower received a call.  An automated call to an Alabama cell phone number might reach the phone's owner in Alabama or Alaska, depending on the location of the phone's owner when the call arrived.  An automated call to a Tennessee cell phone number might reach the phone's owner in Nashville or Nevada.  It is common knowledge that a portable cellular device, i.e. a cell phone, by definition, travels with its owner.[9]  Moreover, as Santander points out, it services consumer debt in all 50 states.  In structuring its debt collection practices, Santander had to know – or at the very least reasonably should have known – that making automated calls to cell phones of borrowers in 50 states in a mobile society could cause the company to have to defend a TCPA claim in any forum where a consumer received automated calls from Santander.  In short, there are no geographical boundaries on Santander's automated cell phone collection efforts.[10]  Given the nature of its business and the way in which Santander chooses

---

[9]  The Supreme Court recently explained that "there is an element of pervasiveness that characterizes cell phones." *Riley v. California,* 134 S. Ct. 2473, 2490 (2014).  The Court noted that "nearly three-quarters of smart phone users report being within five feet of their phones most of the time[] . . . ." *Id.* (citing Harris Interactive, 2013 Mobile Consumer Habits Study (June 2013)).  "[M]odern cell phones . . . are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Id.* at 2484.

[10]  The series of hypotheticals that one could develop to illustrate the boundless nature of Santander's collection calls is equally unlimited.  Assume, for example, that one of the plaintiffs who lives in Tennessee and has a Tennessee-based cell phone number, lives in Florida for six months of the year, and Santander only called the plaintiff's cell phone while she was in Florida. Santander never called the plaintiff's cell phone while she was physically located in Tennessee. Under this set of facts, Santander's calls would create contacts with Florida, not Tennessee.  Or, suppose that one of the plaintiffs who lives in Alabama in a county that borders Mississippi

to remind borrowers of their payment obligations, Santander must have predicted that calls to cell phones might be received in any state or even outside of the United States.  Every time a borrower has received a call in Alabama on a cell phone, regardless of the area code, Santander has purposefully and deliberately entered Alabama for the purpose of servicing consumer automobile loans. Therefore, Santander must reasonably anticipate having to defend TCPA claims under § 227(b)(1)(A)(iii) in this forum.  *See Keeton*, 465 U.S. at 774-75 (publisher's "regular circulation of magazines in the forum State" was "sufficient to support an assertion of jurisdiction for a libel action based on the contents of the magazine" by an out-of-state plaintiff).

Thus, the nature of the TCPA claim and the conduct that gave rise to it weighs in favor of this Court's exercise of jurisdiction over Santander.  The Court rejects Santander's assertion that exercising jurisdiction over the company with respect to the claims of the eight Tennessee plaintiffs is tantamount to exercising general jurisdiction over Santander.  The Court has not suggested and does not hold that Santander may be sued in Alabama generally, regardless of the nature of the cause of action.  Instead, the Court finds that Santander is subject to specific jurisdiction in Alabama with respect to the plaintiffs' TCPA claims.

---

works in Mississippi, and received calls from Santander only while he was at work.  In that case, Santander's calls would create contacts with Mississippi, not Alabama.

The Court's exercise of jurisdiction over Santander under the specific circumstances of this TCPA action reflects "changes in the technology of transportation and communication, and the tremendous growth of interstate business activity." *Burnham v. Superior Court of Cal.,Cnty. of Marin,* 495 U.S. 604, 617 (1990)).  As the Supreme Court has stated repeatedly, due process is an "evolving concept" and may not always be offended when plaintiffs from different forums, who fall short of the numbers needed to form a class, join together to try their cases.  *See Gore v. United States*, 357 U.S. 386, 392 (1958).  Nearly sixty years ago, in its landmark *Hanson v. Denkla* opinion, the Supreme Court observed:

> As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome.  In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

*Hanson v. Denckla*, 357 U.S. 235, 250-51 (1958).  New ways of communicating and doing business have brought with them new ways of committing tortious acts and regulatory violations, and courts have responded with context-sensitive analyses of personal jurisdiction.  *See, e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).

There simply is no constitutional harm in compelling Santander to defend TCPA claims of plaintiffs from both Alabama and Tennessee in this forum when Santander created contacts with Alabama and designed a means of debt collection that makes litigation of all of these claims in Alabama both fair and efficient. Indeed, Alabama has an interest in providing a forum for "efficiently litigating all issues and damage claims" arising out of Santander's allegedly improper calls that are part of this action. *Keeton*, 465 U.S. at 777. Santander's attempt to use the due process clause as a tool to whittle down this action and scatter to a host of forums plaintiffs seeking a statutory damages award for the same alleged misconduct greatly – and perhaps prohibitively – increases for consumers the expense of enforcing the statute that is supposed to protect them and simultaneously increases the burden on federal court dockets and the risk of inconsistent results across forums.[11] "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King Corp.*, 471 U.S. at 474.

Santander has accepted the benefits of doing business in Alabama, and the company is subject to this TCPA action here because the litigation relates to

---

[11] Santander began its defense of the plaintiffs' TCPA claims with a motion to consolidate the *Williams* case with Case No. 14-cv-2104-MHH, *Woods v. Santander*. (Doc. 5). In its motion, Santander stated that "having the same judge consistently address these questions would serve the expeditions administration of justice." (Doc. 5, p. 9). Furthermore, Santander suggested that having a single judge hear the case would reduce the "risk of inconsistent intra-district decisions, which could cause confusion and uncertainty." (Doc. 5, p. 9).

Santander's conduct in this forum.  When the record demonstrates that a defendant has sufficient minimum contacts with a forum, a court must deny a Rule 12(b)(2) motion to dismiss unless the defendant makes a "compelling case" that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).  Santander's argument is not compelling.

## II.   Rule 12(b)(3) Motion to Dismiss or Transfer

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss a claim for improper venue.  When considering a Rule 12(b)(3) motion, a court "consciously look[s] beyond the mere allegations of a complaint, and, although [the court] continue[s] to favor the plaintiff's facts in the context of any actual evidentiary dispute, [the court] do[es] not view the allegations of the complaint as the exclusive basis for decision."  *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012).  The Court's ruling under Rule 12(b)(3) is reviewed "with some measure of deference."  *Id.* at 1238-39.

Plaintiffs Myra Ball, Grover Scott, and Ludie Scott purchased vehicles in Alabama, but none of those sales transactions occurred in the Northern District of Alabama.  Ms. Ball bought a vehicle in Andalusia, Alabama; Andalusia is within the Middle District of Alabama.  (Doc. 1, ¶ 4).  Mr. and Mrs. Scott bought a

vehicle in Mobile, Alabama; Mobile is in the Southern District.  (Doc. 1, ¶¶ 7-8). Plaintiff Amanda Hale lives in Elmore County, Alabama.  Her husband bought a vehicle at Budget Auto Sales.  The complaint does not state where Budget Auto Sales is located.  (Doc. 1, ¶ 9).   Ms. Ball, Mr. and Mrs. Scott, and Ms. Hale's husband financed their vehicles with loans that Santander acquired or serviced. (Doc. 1, ¶¶ 4, 7-9).  Santander contends that venue in the Northern District of Alabama is improper for the four Alabama plaintiffs who reside or bought cars outside of the judicial district.  (Doc. 7, pp. 5-10).[12]  The Court is not persuaded by Santander's argument.

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b).  If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atlantic Marine Const. Co. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568, 577 (2013).   Under 28 U.S.C. § 1391(b), a plaintiff may bring an action in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

---

[12] Again, the conduct at issue has to do with automated collection calls that Santander allegedly made after the initial sales transactions.  The plaintiffs allege that "[o]n multiple occasions, Santander used an autodialer or pre-recorded voice to call" their cell phones.  (Doc. 1, ¶¶ 35, 37-39).   Ms. Ball's and Ms. Hale's cell phone numbers begin with a 334 area code.  (Doc. 1, ¶¶ 35, 39).  Mr. and Mrs. Scott's cell phone numbers begin with a 251 area code.  (Doc. 1, ¶¶ 36-37). The 334 area code is an area code for the Middle District of Alabama.  The 251 area code is an area code for the Southern District of Alabama.

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).[13] A corporation is a resident "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2).[14]

As explained above, when the plaintiffs commenced this action, Santander was subject to personal jurisdiction in the Northern District of Alabama as to all of the plaintiffs' claims. As such, Santander also is a resident of this district with

---

[13] General venue rules apply to private actions under the TCPA. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 750 n.11 (2012) ("As the general rules governing venue and service of process in the district courts are well established, *see* 28 U.S.C. § 1391(b); Fed. Rules Civ. Proc. 4, 4.1, there was no need for Congress to reiterate them in section 227(b)(3).") (internal citation and alteration omitted).

[14] Because Alabama has more than one judicial district and Santander would be subject to personal jurisdiction in each district under the reasoning discussed above, 28 U.S.C. § 1391(d) also applies to this case. *See* 28 U.S.C. § 1391(d) ("For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.").

respect to all of the plaintiffs' claims, making venue proper in the Northern District of Alabama under 28 U.S.C. § 1391(b)(1).[15]

The Court declines Santander's alternative request to transfer pursuant to 28 U.S.C. § 1404(a) the claims of the four Alabama plaintiffs who reside or bought cars outside of this judicial district.  Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The Eleventh Circuit has identified several factors that a court should consider when deciding whether to transfer venue under § 1404, including: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice,

---

[15] Santander did not raise improper venue as a defense in the lead case in this consolidated action, *Woods v. Santander*.  In *Woods*, nine plaintiffs assert individual TCPA claims against Santander that are substantially similar to the claims that the *Williams* plaintiffs allege.  Seven Alabama plaintiffs in *Woods* live in either the Middle District of Alabama or the Southern District of Alabama.  (*See* Doc. 83, ¶¶ 2-8 in Case No. 2:14-cv-2104).  As with its personal jurisdiction argument, Santander's venue argument in *Williams* seems less about fairness to the defendant and more about gamesmanship.  The divide and conquer strategy appears designed to make it more expensive and time-consuming for the plaintiffs to pursue TCPA claims that promise a relatively low statutory damage award to any plaintiff who successfully prosecutes a claim.

based on the totality of the circumstances. *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005). Unless the parties have contractually agreed to a valid choice of forum provision, "the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989). "The decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).

"The question of whether to transfer venue is a two-pronged inquiry. First, the alternative venue must be one in which the action could originally have been brought by the plaintiff." *Cellularvision Tech. & Telecomms, L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007). "The second prong involves an element-by-element analysis. The second prong requires courts to balance private and public factors to determine if transfer is justified." *Id.*

For the reasons discussed above, the first prong of the two-part inquiry is satisfied. The second prong is not satisfied. Only two factors weigh slightly in favor of transferring the plaintiffs' claims to the Middle District of Alabama or the Southern District of Alabama: the convenience of witnesses, and the availability of process to compel the attendance of unwilling witnesses. Santander argues generally that potential fact witnesses live in the possible transferee districts. Santander has not identified a list of potential witnesses and their location relative

to Birmingham to substantiate its argument.  Santander has identified no local employee of the company who might be a witness.  Santander's corporate representative and corporate fact witness can travel to Birmingham just as easily as they can travel to Montgomery or Mobile.  Santander also has not identified specific witnesses who are unwilling or unavailable to testify.  Therefore, these two factors do not outweigh the plaintiffs' choice of forum.  *See Molex Co., LLC v. Andress*, 887 F. Supp. 2d 1189, 1208 (N.D. Ala. 2012) ("Defendant does not identify any of these alleged witnesses, state where they reside, state how many witnesses will be unavailable, or explain any witness's unwillingness or unavailability to testify.  Without more information, the court cannot conclude that the overall convenience of the witnesses weighs so much in favor of litigating in Texas as to override the plaintiffs' choice of an Alabama forum.").

The other § 1404 factors are either neutral or weigh against a transfer.  The physical location of documents carries less weight in the transfer analysis than the other convenience and fairness factors, and the Court finds this factor neutral with respect to transfer in this case.  *See Game Controller Tech., LLC v. Sony Computer Entertain. Am., LLC*, 994 F. Supp. 2d 1268, 1274 (S.D. Fla. 2014) ("The Court has previously found, and repeats here, that producing documents and other files for litigation is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval.") (internal quotation marks,

alterations, and citation omitted); *Microspherix LLC v. Biocompatibles, Inc.*, 2012 WL 243764, at *4 (S.D. Fla. 2012) ("In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant.").

Moreover, transferring the claims of the four Alabama plaintiffs from this district to the Middle District of Alabama or the Southern District of Alabama will not conserve judicial resources or promote the interest of justice. Santander already is defending identical claims in two lawsuits before the undersigned, so it will incur no additional expense in litigating the claims of all Alabama plaintiffs here. It is more convenient for all parties and the judiciary to litigate these substantially similar actions in one court. The four plaintiffs' choice of forum, while entitled to only minimal deference because the plaintiffs did not choose their home forum, *see Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981), nonetheless weighs in the plaintiffs' favor, particularly given the remedial nature of the statutory claim that they assert and the efficiency that they seek by joining their statutory claims with the claims of other TCPA plaintiffs.

## IV.   Conclusion

For the reasons discussed above, the Court denies Santander's motion to dismiss the claims of the Tennessee plaintiffs and Santander's motion to dismiss

and alternative motion to transfer the claims of the out-of-district Alabama plaintiffs.  (*See* Doc. 41).

**On or before June 17, 2016**, the parties shall confer and file a Rule 26(f) report that addresses the claims of all plaintiffs.[16]

Plaintiff Clifton Whearlee may respond to Santander's pending motion for summary judgment **on or before June 17, 2016**.  Santander may file a reply **on or before July 1, 2016**.

**DONE** and **ORDERED** this June 3, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[16] Previously, the parties filed a Rule 26(f) report related to the claims of plaintiff Clifton Whearlee only.  (*See* Doc. 18).