# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CARMEN WOODS, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| **v.** } | |
| } | **Case No.:  2:14-cv-02104-MHH** |
| **SANTANDER CONSUMER USA** } | |
| **INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Carolyn Coleman, Justin Cooper, Debbie Glover, Jalita Flood, Shirley Ray, Cynthia Paul, Ashley Sherrin, Stephen Pollitt, Jameisha Tripp, and Barbara Turner allege that defendant Santander Consumer USA violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A)(iii), by using an automatic telephone dialing system to call the plaintiffs' cell phones without the plaintiffs' prior express consent.  (Doc. 83, ¶¶ 17–30).[1]  Santander argues that the TCPA, as amended by the Bipartisan Budget Act of 2015, violates the First Amendment.  (Doc. 86, p. 4).  Therefore, Santander argues, because the TCPA is invalid, the Court should dismiss the plaintiffs' fourth amended complaint

---

[1] The plaintiffs allege that Santander made the calls in connection with "car loans held and/or serviced by . . . Santander[.]"  (Doc. 83, p. 4).

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 86).  For the reasons stated below, the Court denies Santander's motion.

## I.    RULE 12(b)(6) STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  *See* FED. R. CIV. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  In considering a defendant's motion to dismiss a complaint, the Court accepts the plaintiff's allegations as true and asks whether the plaintiff alleges facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Maledy v. City of Enter.*, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26, 2012).  A complaint that alleges such facts is "'plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint brought pursuant to an unconstitutional statute does not state a plausible claim.  *See Smith v. Casino Ice Cream, LLC*, 2008 WL 4541013, at *1 (S.D. Fla. Oct. 9, 2008) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) for the proposition that, to survive a 12(b)(6) motion to dismiss, a complaint must "assert some viable legal theory") (internal quotation marks omitted).

## III. DISCUSSION

The First Amendment prohibits the enactment of laws that abridge the freedom of speech, but not all laws that affect speech are unconstitutional. *Dana's R.R. Supply v. Atty. Gen., Fla.*, 807 F.3d 1235, 1246, 1249 (11th Cir. 2015) (citing U.S. CONST. amend. I).[2]   To determine whether a law violates the First Amendment, courts begin by asking whether the law is content-based or content-neutral. *See generally, e.g., Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015); *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1258 (11th Cir. 2005). Content-based laws, *i.e.*, "those that target speech based on its communicative content," generally are subject to strict scrutiny and "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226.   Laws that do not make distinctions based on the message a speaker conveys, *i.e.*, content-neutral laws, are analyzed under a less severe intermediate scrutiny standard. *See Solantic*, 410 F.3d at 1258.   Under the content-neutral standard, a government may restrict the "time, place, or manner of protected speech, provided the restrictions . . . are narrowly tailored to serve a

---

[2] For example, the United States Supreme Court has upheld ordinances that restrict the posting of signs on public property or prohibit the use of sound trucks to broadcast "in a loud and raucous manner." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2232 (2015); *Kovacs v. Cooper*, 336 U.S. 77, 89 (1949).   In the Eleventh Circuit, it is well-established that a city may combat certain types of crime by limiting the locations where adult theaters may operate. *Daytona Grand, Inc. v. City of Daytona Beach, Fla.*, 490 F.3d 860, 870 (11th Cir. 2007).   Such restrictions, according to the Supreme Court and the Eleventh Circuit Court of Appeals, are legitimate means by which a city may protect its aesthetic interests or promote public safety. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984); *Daytona*, 490 F.3d at 874.

significant government interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Alongside these frameworks, the United States Supreme Court has articulated a separate standard for analyzing restrictions on commercial speech.[3] *See Dana's R.R. Supply v. Atty. Gen., Fla.*, 807 F.3d 1235, 1246, 1249 (11th Cir. 2015) (citing *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980)).  Under the so-called *Central Hudson* test, courts assess the constitutionality of restrictions on commercial speech by asking: (1) if the challenged law regulates speech that is "'neither misleading nor related to unlawful activity[,]'" (2) if the government has a "'substantial interest'" at stake, (3) if the challenged law "'directly advance[s]'" the government's interest, and (4) if the government's interest could be served by a "'more limited restriction[.]'" *See Dana's*, 807 F.3d at 1249 (quoting *Cent. Hudson*, 447 U.S. at 564).

Like the standard for time, place, or manner restrictions on noncommercial content-neutral speech, the *Central Hudson* test is one of intermediate scrutiny. *Dana's*, 807 F.3d at 1246 ("For [commercial speech], the inquiry is the more flexible, yet still searching, standard of intermediate scrutiny."); *see Moser v. Fed.*

---

[3]  "Commercial speech is a narrow category of necessarily expressive communication that is related solely to the economic interests of the speaker and its audience . . . or that does no more than propose a commercial transaction."  *Dana's R.R. Supply v. Atty. Gen., Fla.*, 807 F.3d 1235, 1246 (11th Cir. 2015) (internal citation and quotation marks omitted).

*Commc'ns Comm'n*, 46 F.3d 970, 973 (9th Cir. 1995) ("[T]he tests for time, place, or manner restrictions for content-neutral speech and regulations for commercial speech . . . are essentially identical."). Even where commercial speech is content-based, courts apply intermediate scrutiny. *See id.* (explaining that "the general rule that content-based restrictions trigger strict scrutiny is not absolute" and that "content-based restrictions on certain categories of speech such as commercial . . . speech . . . are given more leeway because of the robustness of the speech and the greater need for regulatory flexibility").

In its motion to dismiss, Santander argues that the TCPA is content-based, but Santander stops short of asking the Court to apply strict scrutiny because, Santander contends, the TCPA regulates commercial speech. (Doc. 86, pp. 5–13). Santander therefore asks the Court to apply intermediate scrutiny and to analyze the constitutionality of the TCPA under *Central Hudson*. (Doc. 86, p. 13).[4] The Court disagrees with Santander's premise.

The TCPA touches on economic activity, but the statute regulates more than commercial speech. The TCPA is a "'hybrid' law 'that implicates commercial *and* political speech'" and private speech. *See Dana's*, 807 F.3d at 1248 (quoting *BellSouth Telecomms., Inc. v. Farris*, 542 F.3d 499, 505 (6th Cir. 2008) (emphasis

---

[4] In the alternative, Santander argues that the TCPA is an invalid time, place, or manner restriction under *Ward*. (Doc. 86, pp. 20–25).

provided by *BellSouth*).[5]   Under the TCPA, as amended in 2015, the statute prohibits a person from using an automatic dialing system to "make any call . . . other than a call made for emergency purposes or made with the prior express consent of the called party . . . , unless such call is made solely to collect a debt owed to or guaranteed by the United States."  47 U.S.C. § 227(b)(1)–(b)(1)(A)(iii). Thus, under § 227(b)(1)(A)(iii), unless the recipient of the call consents beforehand, a person may neither use an automatic dialing system to collect a private debt or propose a commercial transaction, nor use an automatic dialing system to advocate on behalf of a political candidate or play a prank on a friend. Because of the breadth of this restriction, the TCPA does not merely regulate commercial speech.  *See Dana's*, 807 F.3d at 1246–48.  Accordingly, like other courts that have addressed the constitutionality of the TCPA, this Court will not analyze the statute under *Central Hudson*.  *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014); *Moser*, 46 F.3d at 973; *Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1380 (N.D. Ga. 2013); *Strickler v. Bijora, Inc.*, 2012 WL 5386089, at *5 (N.D. Ill. Oct. 30, 2012).

---

[5] In *BellSouth Telecommunications, Inc. v. Farris*, a panel of the Sixth Circuit Court of Appeals explained its "difficulty in placing a label on" Kentucky Revised Statute § 136.616 by suggesting that the law was a "hybrid[.]"  *BellSouth Telecomms. v. Farris*, 542 F.3d 499, 505 (6th Cir. 2008). Section 136.616 imposes a tax on the gross revenues of telecommunications providers and states that "[t]he provider shall not collect the tax directly from the purchaser or separately state the tax on the bill to the purchaser."  Ky. Rev. Stat. Ann. § 136.616(1)–(3); *BellSouth*, 542 F.3d at 500.  The Sixth Circuit held that the statute's "no-stating-the-tax provision" violated the First Amendment under "even the less-stringent intermediate level of scrutiny applicable to commercial speech" and, thus, declined to resolve the question of § 136.616's hybrid nature. *BellSouth*, 542 F.3d at 504–05.

Instead, because the TCPA reaches both commercial and noncommercial speech, the Court must determine if the statute is content-based or content-neutral. To the extent that the TCPA "applies to particular speech because of the topic discussed or the idea or message expressed[,]" the TCPA is content-based, and the Court will apply strict scrutiny under *Reed*. *Reed*, 135 S. Ct. at 2226. To the extent that the TCPA can be "justified without reference to the content of the regulated speech," the TCPA is content-neutral, and the Court will apply intermediate scrutiny under *Ward*. *Id.* at 2227 (quoting *Ward*, 491 U.S. at 791) (internal quotation marks omitted).

## A.    2015 Amendments

Section 227(b)(1)(A)(iii), as amended by the Bipartisan Budget Act of 2015, provides that:

> It shall be unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . , unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

47 U.S.C. § 227(b)(1)–(b)(1)(A)(iii); *see also* Bipartisan Budget Act of 2015, Pub. L. No. 114-74 § 301, 129 Stat. 584, 588 (2015). Before the 2015 amendments, the TCPA did not contain an exception for calls made solely to collect a debt owed to or guaranteed by the United States. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (2012). The Ninth Circuit Court of Appeals and the district courts that addressed the

constitutionality of the pre-amendment version of the TCPA upheld the statute under *Ward* as a valid, content-neutral legislative response to concerns about consumer privacy and potential costs associated with calls to consumers' cell phones. *See Gomez*, 768 F.3d at 876 (quoting *Moser*, 46 F.3d at 973) ("'Because nothing in the statute requires the [FCC] to distinguish between commercial and noncommercial speech, we conclude that the statute should be analyzed as a content-neutral time, place, and manner restriction.'"); *Wreyford*, 957 F. Supp. 2d at 1380 ("[Because t]he TCPA regulates any call, regardless of its message[,] section 227(b)(1)(A) is a content-neutral time, place, and manner restriction on speech.") (internal citation and quotation marks omitted); *Strickler*, 2012 WL 5386089, at *5.

Here, Santander challenges the TCPA as amended by the Bipartisan Budget Act of 2015. As amended, the TCPA still prohibits the use of an automatic dialing system to make a non-emergency-related call to a cell phone without the prior express consent of the called party, but the amended statute permits automated calls that are "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). Santander argues that this exception for government debt renders the TCPA content-based under *Reed*. (Doc. 86, p. 4).

The Court will not address the effect of the government-debt exception on the constitutionality of the TCPA because the conduct at issue in this lawsuit—

Santander's alleged use of an automatic dialing system to call the plaintiffs' cell phones—occurred before Congress enacted the 2015 amendments.  (*See* Doc. 83). In general, there is a "presumption against retroactive legislation . . . deeply rooted in our jurisprudence[,]" and the Court is not persuaded by Santander's arguments that the presumption should not apply here.  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *see also Fikes v. Wal-Mart, Inc.*, 322 Fed. Appx. 882, 883 n. 1 (11th Cir. 2009) (discussing the presumption against retroactive application of the 2009 amendments to the ADA and analyzing the plaintiff's claims under "the ADA as it was in effect at the time of the alleged discrimination"); *Morales v. Ga. Dep't of Human Res.*, 2010 WL 4639279, at *3 n. 3 (M.D. Ga. Nov. 8, 2010) ("As the conduct Plaintiff complains [*sic*] about occurred prior to January 1, 2009, the Court will look to the pre-2009 version of the ADA . . . in analyzing Plaintiff's claims."); (Doc. 100, pp. 10–14).  Thus, for purposes of Santander's motion to dismiss, the Court will evaluate the pre-2015 version of the TCPA.[6]

---

[6] Even if the Court were to examine the TCPA as amended in November 2015 and find that the government-debt exception is invalid, the Court would "not deem the entire TCPA to be unconstitutional because the [government-debt] exception [is] severable from the remainder of the statute." *Brickman v. Facebook, Inc.*, 2017 WL 386238, at *8 (N.D. Cal. Jan. 27, 2017).  The United States Supreme Court has "reaffirmed that the invalid portions of a statute are to be severed unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not." *Immigration and Naturalization Serv. v. Chadha*, 462 U.S. 919, 931–32 (1983) (citation and internal quotation marks omitted).  Here, there is no evidence that Congress would not have enacted the TCPA without the exception for government debt.  To the contrary, Congress did enact the TCPA without the exception for government debt, and the version of the TCPA without the exception has been upheld as a valid time, place, or manner restriction by several courts throughout the country.  *See Gomez*, 768 F.3d at 876; *Moser*, 46 F.3d at 972; *Wreyford*, 957 F. Supp. 2d at 1380; *Strickler*, 2012 WL 5386089, at *5.

### B.     The pre-amendment version of the TCPA is constitutional.

As noted above, several courts have upheld the pre-amendment version of the TCPA as a valid, content-neutral restriction on speech under *Ward*. *Gomez*, 768 F.3d at 876; *Moser*, 46 F.3d at 972; *Wreyford*, 957 F. Supp. 2d at 1380; *Strickler*, 2012 WL 5386089, at \*5. In *Gomez*, the Ninth Circuit Court of Appeals reaffirmed its decision in *Moser*, in which it held that the TCPA was narrowly tailored to advance the government's significant interest in protecting residential privacy and that the statute left open ample alternative channels of communication. *See Gomez*, 768 F.3d at 876 (citing *Moser*, 46 F.3d at 975). The district court in *Wreyford* reached the same conclusion. *Wreyford*, 957 F. Supp. 2d at 1380–82. The Court finds the reasoning of *Gomez*, *Moser*, and *Wreyford* persuasive.

First, the TCPA serves a significant state interest. Congress enacted the TCPA "to protect the privacy interests of . . . telephone subscribers by placing restrictions on unsolicited, automated telephone calls[.]" S. Rep. No. 102-178, 1 (1991). The Senate Committee on Commerce, Science, and Transportation explained in its report that it "believe[d] that Federal legislation [wa]s necessary to protect the public from automated calls [because t]hese calls can be an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services." *Id.* at 5. Thus, Congress concluded in its findings that "[b]anning such automated or prerecorded telephone calls[,] except when the receiving party

consents to receiving the call or when such calls are necessary in an emergency situation . . . , is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, § 2(12).

In considering the importance of the government's interest in consumer privacy, "[t]he Supreme Court has frequently emphasized that '[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.'" *Brickman v. Facebook, Inc.*, 2017 WL 386238, at *6 (N.D. Cal. Jan. 27, 2017) (quoting *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 775 (1994); *Frisby v. Schultz*, 487 U.S. 474, 484 (1988); *Carey v. Brown*, 447 U.S. 455, 471 (1980)). Consequently, the Supreme Court has "repeatedly held that individuals are not required to welcome unwanted speech into their homes and that the government may protect this freedom." *Frisby*, 487 U.S. at 484–85. In *Gomez*, the court of appeals extended the notion of residential privacy to cell phones, explaining that, "in many households a cell phone *is* the home phone [and that, a]s a consequence, prohibiting automated calls to land lines alone would not adequately safeguard the [state's] interest in residential privacy." *Gomez*, 768 F.3d at 876–77 (emphasis provided by *Gomez*).

Santander argues that the Supreme Court held in *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011), that privacy interests similar to those in question here were

"insubstantial." (Doc. 86, p. 14). Santander's comparison is inapposite. In *Sorrell*, the Supreme Court struck down a Vermont statute that, among other things, limited pharmaceutical marketers' ability to use "prescriber-identifiable information for marketing or promoting a prescription drug" without the prescriber's consent. Vt. Stat. Ann., tit. 18, § 4631(d); *Sorrell*, 564 U.S. at 557, 580.[7] As part of its reasoning, the Supreme Court explained that the state's interest in protecting doctors from "harassing sales behaviors" was insufficient to justify § 4631(d)'s restriction on speech. *Sorrell*, 564 U.S. at 575 ("It is doubtful that concern for a few physicians who may have felt coerced and harassed by pharmaceutical marketers can sustain a broad content-based rule like § 4631(d).") (internal quotation marks omitted).

   *Sorrell* is different from the present case because, in *Sorrell*, the Supreme Court was concerned with the state's interest in protecting doctors from harassment, not the state's "interest in protecting the well-being, tranquility, and privacy of the home[.]" *Frisby*, 487 U.S. at 484; *see Sorrell* 564 U.S. at 572. While at work, "we [may] expect individuals simply to avoid speech they do not want to hear, [but] the home is different." *See Frisby*, 487 U.S. at 484. Indeed, "a special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions." *Id.* Thus, the

---

[7] Prescriber-identifiable information is information contained in pharmacy records that reveals the prescribing practices of individual doctors. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 557 (2011).

Court agrees with the courts in *Gomez*, *Moser*, and *Wreyford* that the TCPA serves a significant government interest in protecting residential privacy. *See Gomez*, 768 F.3d at 876; *Moser*, 46 F.3d at 975; *Wreyford*, 957 F. Supp. 2d at 1380–82.

The Court also agrees with the courts in *Gomez*, *Moser*, and *Wreyford* that the TCPA is narrowly tailored to serve the government's interest and leaves open ample alternative channels of communication. Santander argues that the TCPA is not narrowly tailored because there are "numerous means to achieve the goal of protecting privacy that are less restrictive than an outright ban on ATDS calls[.]" (Doc. 86, p. 16). In addition, Santander argues that the TCPA is "hopelessly overbroad" because it prohibits calls made for purposes other than telemarketing. (Doc. 86, p. 17). Santander's arguments are not persuasive.

"For a content-neutral . . . regulation to be narrowly tailored, it must not 'burden more speech than is necessary to further the government's legitimate interests.'" *McCullen v. Coakley*, 134 S. Ct. 2518, 2530, 2535 (2014) (quoting *Ward*, 491 U.S. at 799). Unlike a content-based law, a content-neutral regulation "'need not be the least restrictive or least intrusive means of' serving the government's interests[,]" so long as the law does not "'regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.'" *McCullen*, 134 S. Ct. at 2535 (quoting *Ward*, 491 U.S. at 798–99).

Congress enacted the TCPA to protect consumers from the intrusion of all unwanted automated calls, not only advertisements and telemarketing calls. *See* S. Rep. No. 102-178, 1 (1991); Pub. L. No. 102-243, § 2(10), (13); *see also Gomez*, 768 F.3d at 876 ("[N]othing in the statute requires the [FCC] to distinguish between commercial and noncommercial speech[.]") (citation and internal quotation marks omitted); *Wreyford*, 957 F. Supp. 2d at 1380 ("The TCPA regulates 'any call,' regardless of its message."). As a means of protecting consumers from unwanted automated calls, the TCPA burdens only the speech that the law was passed to prevent: "uninvited calls to cellular phones, regardless of the content of the message." *Wreyford*, 957 F. Supp. 2d at 1381. Furthermore, the TCPA's prohibition on the use of automatic dialing systems leaves open ample alternative channels by which a person may communicate his or her message. As the Court in *Moser* explained, nothing in the TCPA prohibits "the use of taped messages introduced by live speakers[,] taped messages to which consumers have consented, [or] live solicitation calls." *Moser*, 46 F.3d at 975.

Thus, the TCPA is narrowly tailored to advance a significant government interest and leaves open ample alternative channels of communication. Accordingly, the TCPA satisfies intermediate scrutiny under *Ward*.[8]

---

[8] Santander also challenges § 227(b)(2)(C), which authorizes the FCC to "exempt from the requirements of paragraph (1)(A)(iii) . . . calls . . . that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of [consumer privacy]." 47 U.S.C. § 227(b)(2)(C). Santander does not contend that § 227(b)(2)(C) is, in itself, a

## IV.   CONCLUSION

The version of the TCPA that was in effect when Santander allegedly used an automatic dialing system to call the plaintiffs' cell phones without their consent is constitutional, and the plaintiffs have sufficiently alleged that Santander violated the statute.   Accordingly, the Court **DENIES** Santander's motion to dismiss the plaintiffs' fourth amended complaint.  (Doc. 86).

**DONE** and **ORDERED** this March 30, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

content-based provision, but instead argues that certain exemptions that the FCC has created pursuant to § 227(b)(2)(C) render the TCPA an unconstitutional content-based restriction on speech.  (*See* Doc. 86, pp. 6–7, 11–12) (discussing, for example, a "recent declaratory order," in which the FCC exempted from the scope of § 227(b)(1)(A)(iii) calls intended to prevent fraud, calls concerning identity theft and data security breaches, and calls regarding money transfers).  See *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C.R. 7961, 8023 (2015).

The Court will not address Santander's arguments regarding orders that the FCC has issued pursuant to § 227(b)(2)(C) because the Court lacks jurisdiction to do so.  *See* 28 U.S.C. § 2342 ("The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission[.]"); *see also Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014) (discussing the judicial efficiency promoted by "vest[ing] an appellate panel rather than a single district judge with the power of agency review") (citation and internal quotation marks omitted).  Santander argues that the Court has jurisdiction to consider the FCC's orders because Santander "has not asked the Court to enjoin, set aside, suspend, or determine the validity of the FCC's final orders[,]" but, instead, to determine whether the orders render the TCPA unconstitutional.  (Doc. 100, p. 18).  The Court finds no meaningful distinction between the two requests.